UNITED STATES v. CERTAIN PARCELS OF LAND IN PHILADELPHIA, PA., et al.

Appeal of REALTY VALUATORS, Inc., et al.

Appeal of CITY OF PHILADELPHIA.

No. 7910, 7964.

Circuit Court of Appeals, Third Circuit.

Argued July 16, 1942.

Decided Sept. 17, 1942.

Before GOODRICH, Circuit Judge and SMITH and LEAHY, District Judges.

GOODRICH, Circuit Judge.

The owners of certain real estate in the City of Philadelphia on December 26, 1940, and on January 9, 1941, delivered to the United States of America, represented by the Federal Works Administrator acting through the United States Housing Authority, options to purchase the parcels of land described therein at a stipulated price. On March 10, 1941, the United States condemned the land by a Declaration of Taking,[1] depositing with the court the sum agreed upon as the purchase price. From the funds deposited, the City and School District of Philadelphia claimed $3,197.00 for real estate taxes assessed against certain of the properties taken, for the year 1941. The owners resisted this claim as to the land described in the options of December, 1940, claiming it was exempt from taxation for the year 1941. The trial judge apportioned the taxes, holding the former owners liable for that fraction of a year from January first to the date of the taking by the United States, March 10. The municipal corporation and the landowners have both appealed.

The question of apportionment will be considered first. The trial judge relied upon (1) a clause in § 258a which provides: "The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable," and (2) the decision in United States v. Certain Land in City of St. Louis, D.C.E.D.Mo.1939, 29 F.Supp. 92, construing the section.

The court was authorized by the statute to direct that taxes be paid from the fund deposited with it.[2] But the tax liability in such a case is a question of state law, and in the St. Louis case, as has been noted since,[3] the federal court concluded that Missouri law had not fixed the extent of tax liability nor the lien therefor at the time of condemnation. The correct test as to whether there can be apportionment, we think, is whether the tax was a lien on the property at the time title vested in the

G. Coe Farrier, of Philadelphia, Pa., for appellant City of Philadelphia.

Harry A. Kalish, of Philadelphia, Pa., for appellant Realty Valuators, Inc.

[1] 40 U.S.C.A. § 258a.

[2] Cobo v. United States, 6 Cir., 1938, 94 F.2d 351.

[3] United States v. Certain Parcels of Land in City of San Diego, San Diego County, D.C.S.D.Cal.1942, 44 F.Supp. 936.

government.[4] In this case, it is admitted that taxes for the entire year 1941 were assessed on January 1, 1941. They were, by express terms of the statute, liens on the property from that date forth.[5] This rule would seem to settle the question of apportionment in the negative. The result is supported also by the well established doctrine in Pennsylvania that although property becomes exempt from taxation during the taxable year, the exemption does not begin until the ensuing year[6] and taxes assessed prior thereto are neither diminished nor pro-rated.[7] The only point that looks in the other direction is some authority to the effect that in Philadelphia "in accordance with the custom, which, by common consent, has acquired the force of 'law'" taxes are pro-rated between the vendor and purchaser on a sale of land.[8]

◼ This we think clearly a matter of adjusting the taxation burden between buyer and seller and not applicable where the property becomes exempt in the hands of the purchaser.[9] Our conclusion upon this point is that the present facts do not constitute a case where apportionment is proper and that the learned trial judge erred in so holding.

We pass next to the question whether 1941 taxes may be recovered by the City and School District on the land upon which the options were given in December, 1940. As we understand it, this argument is not applicable to the small portion of the property covered by the option of January 9, 1941. The theory of the landowner as to this point is based on the doctrine of equitable conversion. If an owner agrees to sell and a purchaser agrees to buy a given piece of land, the purchaser is for many purposes treated as the owner prior to the receipt of a deed by him and the argument here is that one of those purposes is liability for taxation. If, instead of engaging himself to buy the land, a prospective purchaser has been given an option to purchase, the argument is that, by the law of Pennsylvania, upon the exercise of the option the purchaser becomes the equitable owner as of the date the option was given. Here, the argument runs, the acceptance of the options gave the United States ownership as of December 26, 1940, so that on January 1, 1941, the land was not subject to taxation since, of course, land owned by the United States is not taxable by the City or School District.

◼ The first difficulty we meet in considering this argument is that we do not know as a fact that the options were exercised. There is no stipulation of facts between the parties upon record. The proceeding in the court below was one to which the federal rule requiring findings of fact by the trial judge is not applicable.[10] The landowners' petition alleges that the United States, represented by the Federal Works Administrator, accepted the offers contained in the options. The City of Philadelphia, in its answer, disclaimed any knowledge of the acceptance. In its brief on appeal, in its "Statement of the Case", it states that the options were accepted, but in its "Argument" denies that the options were exercised or completed by the United States. It is not denied that the United States took title through proceedings begun by the Declaration of Taking. In the view we take of this case, however, we may assume that the options were exercised as the petitioners allege.

---

[4] So stated in United States v. 44,549 Square Feet of Land in Borough of Brooklyn, City and State and Eastern Dist. of New York, D.C.E.D.N.Y.1941, 41 F.Supp. 523.

[5] 53 P.S. § 2022. "All taxes * * * assessed on any property in this Commonwealth, * * * are * * * declared to be a first lien on said property, * * *."

[6] See W. G. Halkett Co. v. City of Philadelphia, 1934, 115 Pa.Super. 209, 175 A. 299.

[7] Philadelphia v. Pennsylvania Company for the Instruction of the Blind, 1906, 214 Pa. 138, 63 A. 420, 6 Ann.Cas. 437; Dougherty v. City of Philadelphia, 1934, 112 Pa.Super. 570, 172 A. 177. In each case the land was put to a use, after the taxes for the year had accrued, which rendered it exempt from taxation.

[8] Moore v. Taylor, 1892, 147 Pa. 481, 484, 23 A. 768, 769. Repeated, obiter, in Schermer v. Wilmart, 1925, 282 Pa. 55, 59, 127 A. 315, 316, and In re Pusey's Estate, 1930, 299 Pa. 325, 330, 149 A. 479, 481.

[9] See comment by Stern, J. in the Halkett case, supra. In that case the City voluntarily apportioned the taxes.

[10] See Rule 81(a) (7), Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Courts are divided upon the question whether the equitable conversion doctrine applies to the sale of land upon the exercise of an option to buy by the purchaser as of the date upon which the option is exercised or the date upon which the option was given. American Jurisprudence cites the difference of opinion as one concerned with the problem whether the purchase money goes to the heirs or the personal representative of the vendor where an option is given in his lifetime and exercised after his death.[11] Pennsylvania decisions have, in cases involving rights of buyer and seller and assignees of each, treated the buyer's right, upon exercise of the option, as relating back to the time it was given.[12] However, these decisions do not involve the question of taxation, even between the parties and are far from any problem of the circumstances which will exempt property from taxation altogether.

Under the general rule in cases of contracts for the sale of land the party who was in possession or entitled to possession at the time is ordinarily bound to pay the tax which accrues on the land between the date of the contract and the conveyance.[13] This rule has been applied in federal courts.[14] While we do not find this rule stated as the controlling one in the Pennsylvania decisions considering tax liability between the parties to a contract for conveyance we do find that the burden of taxation has followed possession or the right thereto.[15] In the case at bar, on January 1, 1941 the United States neither had possession of this land nor was it entitled to possession since under the option agreements it was to be entitled to possession within five days of the acceptance of the offers. The offers were not accepted until February 27, 1941, according to the claim of the petitioners. Our conclusion is that even if we assume, as a fact, the landowners' statement that the options were accepted in February, 1941, that on January 1, 1941, the owners were in possession and had the right thereto and a subsequent acceptance of the options by the purchaser did not free the vendors from the tax liabilities which accrued on January 1, 1941.

The order is reversed and the case remanded for proceedings not inconsistent with this opinion.

---

[11] 19 Am.Jur., Equitable Conversion, § 16.

[12] Applying the fiction of equitable conversion, the courts held that the optionee's interest could be enforced against a purchaser from the optionor prior to the exercise of the option (Kerr v. Day, 1850, 14 Pa. 112, 53 Am.Dec. 526), and that fire insurance proceeds (People's St. Ry. Co. v. Spencer, 1893, 156 Pa. 85, 27 A. 113, 36 Am.St.Rep. 22) and a condemnation award (Appeal of Phœnixville, V. F. & S. E. Ry. Co., 1918, 70 Pa.Super. 391) were payable to the optionee, where the event giving rise to these funds occurred in the interim between the giving of the option and its acceptance.

[13] See Annotation (1921) 12 A.L.R. 411.

[14] Bradford v. Union Bank of Tennessee, 1851, 13 How. 57, 14 L.Ed. 49; Sherman v. Savery, D.C.Iowa 1880, 2 F. 505.

[15] Densmore v. Haggerty, 1868, 59 Pa. 189 (vendor in possession could not recover from the vendee taxes which he had paid); in Gheen v. Harris, 1895, 170 Pa. 644, 32 A. 1094, and City of Philadelphia v. Myers, 1931, 102 Pa.Super. 424, 157 A. 13, the liability was placed upon the vendees who were in possession as the taxes became due. In Mangold v. Isabella Furnace Company, 1906, 31 Pa.Super. 275, the vendee could have obtained possession upon the payment of the purchase money.

The Court in the Densmore case, in addition to making a point that the vendor was entitled to the rents and profits, and therefore to possession, when the tax accrued, emphasized that under the agreement of sale he was to deliver "a good and sufficient title, unencumbered," and that "this could only be done by his paying these liens [for taxes], * * *." If this be significant, it is noteworthy, that in the present case the owners, in the option agreements, agreed to convey "a valid title * * *, free and clear of all * * *, taxes, and assessments, existing or inchoate, liens or encumbrances of any sort * * *".