HAZEL M. SKAFF, Appellee, v. M. H. GODBERSEN, Appellant.

No. 46889.

OCTOBER 15, 1946.

REHEARING DENIED DECEMBER 20, 1946.

Griffin & Griffin, of Sioux City, for appellant.

Spencer M. Day and Kindig, Kindig & Beebe, all of Sioux City, for appellee.

BLISS, J.—The real estate involved is a small, irregular portion of a square acre of ground and along the east line thereof, which acre lies along the north side of the Correctionville Road, and is known as the "2500 block" in Sioux City, Iowa. Plaintiff alleged in her petition, filed November 26, 1945, that she leased this irregular tract to the defendant from month to month, by verbal agreement, and about October 16, 1945, she terminated the lease by the service on defendant of a thirty-day notice to vacate and by service upon him about November 23, 1945, of a three-day notice to vacate the premises, but notwithstanding the service of these notices the defendant refused to surrender possession.

Defendant filed answer on December 1, 1945, alleging, in substance, that: He denied that he was holding over after the termination of any lease of the premises; he denied that he had ever made any lease of the premises with the plaintiff or with anyone else; he admitted the service of the notices and his refusal to surrender possession of the premises. He further answered: That he was in possession of the premises only as the

custodian or representative of his son, Paul M. Godbersen, who held the premises under a sublease, executed July 20, 1942, by L. P. Byse, a lessee of the property, granting possession to G. I. Godbersen, an elder son of defendant, until July 28, 1947, who had turned over the sublease to Paul M. Godbersen; that the sublease was recorded in the office of the county recorder shortly after its execution; that Paul had continued in possession of the property until he became a member of the United States Army in the latter part of the year 1944, and was then (at the time of the pleading) stationed with said Army in Japan; that Paul had been operating a monument and tombstone business on said premises, and prior to his entry into the service had put the defendant into possession of the property and of his stock of merchandise to preserve the same and the going value of his business until the termination of his military service; that because of Paul's absence in the military service and the difficulty of communication he is unable to make a proper defense in the action; that plaintiff procured the removal of a large number of the monuments from the premises on November 25, 1945, in such manner as to greatly damage the monuments. Defendant prayed that the petition be dismissed and plaintiff be restrained from further interference with the property and merchandise, and that the action be continued for the purpose of permitting Paul M. Godbersen to file a petition of intervention to allege and prove his damages. Plaintiff filed a reply expressly denying the allegations of the answer. It was stipulated that plaintiff's husband represented her in the matters involved.

As provided in section 648.5, Code, 1946 (section 12267, Code, 1939, as amended by chapter 303(2), Acts of the Forty-ninth General Assembly, and chapter 228(1), Acts of the Fifty-first General Assembly), the suit was tried as an equitable action. It is reviewable here de novo.

There is support in the record for the following facts: A rough drawing, admitted by stipulation, of the ground involved, together with that immediately contiguous, shows the ground in controversy is an irregular tract somewhat triangular in shape, the east line of which is the east line of the square acre, extending north from the Correctionville Road to a twelve-foot public alley. The south line was about eight feet wide along said

road. The west side was enclosed by a fence which extended from the southwest corner of the tract in a northwesterly direction along the curved outer edge of a graveled driveway which extended around a refreshment stand located west of the ground involved herein. This driveway permitted access to the stand by vehicles from the Correctionville Road and the public alley to the north.

In July 1942, L. P. Byse was operating the refreshment stand. On July 28, 1942, Byse executed to G. L. Godbersen a written lease providing:

"In consideration of $5.00 per month I do hereby lease to G. L. Godbersen such space of ground as will not be needed in the conduct of my Refreshment Business located in the 2500 Block on North Side of Correctionville Road with the exception of a private city alley across the acre of ground. This lease particularly covers the east part with a south front from east lot line to about 2 ft. on the east end of the drive crossing as indicated by a fence, which I allow him to erect.

"This fence is to extend north in line with my gravel drive, thus the leased space will be about 50 ft. wide in the rear. Mr. G. L. Godbersen is not to stretch fence across a certain drive path from alley to my Refreshment Stand and gravel drive.

"The ground above outlined is to be used for a Monument Display with a movable 10 ft. x 10 ft. Office Building on the north end.

"*I further permit Mr. G. L. Godbersen to take possession of the balance of the ground for certain winter months when I don't need it myself in the conduct of my Refreshment Stand Business.* [Italics supplied.] * * * ·

"There will be no extra charge for this accommodation and Mr. G. L. Godbersen is to remove his belongings on my return in the Spring from this last mentioned balance of this ground at my request.

"Unless my Refreshment Stand Business increases to such an extent that I must need the east part, leased to Mr. G. L. Godbersen, myself, will I agree not [sic] to demand Mr. Godbersen to vacate and rent to someone else.

"It is the understanding that myself and Mr. Godbersen will cooperate with each other in all matters pertaining to our

above agreement and in case one of us desires to sell out, to give the other the first chance to meet the other highest bid.

"The aim of this agreement is to perpetuate a Gentlemen's Deal and Understanding in Good Faith, which the both of us aim to make last * * * at least 5 years or longer, if each of us finds it possible to do so."

Both parties signed the instrument and Godbersen acknowledged it and it was recorded August 11, 1942.

G. L. Godbersen had operated his monument business at this place since about June 1941. His brother Paul, after his graduation from high school in June 1943, assisted or had some interest in the business until he entered the military service late in 1944. Sometime in 1943, G. L. Godbersen, on some charge not disclosed in the record, was incarcerated in the federal penitentiary at Sandstone, Minnesota. He turned the business over to Paul. Thereafter, Paul was in charge of the business until he entered the military service in the fall of 1944. The defendant testified that he had been operating a monument business at Holstein, Iowa, since 1917, and had frequently come to Sioux City to help his sons when they opened a like business. When Paul left the defendant spent all of his time in Sioux City, selling monuments and keeping the business going for his son Paul. He closed his business at Holstein. The defendant's daughter, Hildegarde Maria Godbersen, did the office work and handled the money end of the business at Sioux City.

In September 1943, the plaintiff, Hazel Skaff, bought the refreshment stand of Byse—that is, she bought the building and its equipment. She did not rent from Byse. On September 1, 1943, she rented the ground—the square acre—necessarily including the part involved in this suit, from the Schultz estate for one year, with the privilege of another year. At the end of the second year, in September 1945, she bought the square acre.

As noted in the lease herein set out between Byse and G. L. Godbersen, the latter was permitted, without charge, to use a part of the ground outside the fence, except in the summer season, to display his merchandise. When plaintiff leased the property in September 1943 and bought out Byse the monument business was in operation and there were tombstones and markers on display both inside and outside of the driveway fence. The

plaintiff's husband testified that he saw no one in charge of the monument business but the defendant, and that at the request of the latter he made a verbal, month-to-month lease with the defendant of the ground inside the fence for $5 a month in the winter and $15 a month in the summer.

Defendant's version of the transaction is somewhat different. He testified that the rental transaction was between G. L. Godbersen and plaintiff's husband and had to do only with the ground outside of the fence, for which the rental was to be $10 a month during the summer months or while the refreshment business was in operation. Defendant admits that he and Paul and G. L. Godbersen were present with plaintiff's husband but that defendant merely aided in getting G. L. Godbersen and plaintiff's husband in agreement.

Whatever the arrangement was, it appears that thereafter Byse was no longer involved and all of the rent was paid to the plaintiff. The monthly payments of $5 were by checks signed by H. M. Godbersen (Hildegarde Maria Godbersen, the sister, and office girl). Several such checks payable to plaintiff for the rent of December 1943 and several months in 1944 were introduced in evidence. Also introduced in evidence were six receipts of $10 each signed by plaintiff's husband to Sioux City Monument Company (the trade name of the Godbersens), marked "special rent bonus" covering six months from April 1st to the end of September 1945. A check of $5 marked for November 1945 rent was not cashed by plaintiff.

Plaintiff arranged to replace the old refreshment stand with a new building, and, at the request of the architect, the defendant moved some of the monuments to make room for the excavated dirt. On November 25, 1945, laborers for plaintiff removed many more finished monuments from the ground occupied by defendant.

Defendant relies strongly upon the fact that plaintiff had both actual and constructive notice of the rights of the Godbersen boys in the premises at the times she leased and purchased the premises and that the Byse-Godbersen lease showed upon her abstract of title.

Neither the plaintiff, Mr. Byse, the Godbersen office girl, nor the administratrix of the Schultz estate was a witness.

1420

Each of them might have enlightened the trial court as to material facts. The plaintiff's husband and the defendant were the only witnesses. Many matters are left to inference. The fact that the Byse-Godbersen lease was on record when the plaintiff purchased the Byse equipment and building and rented the property is not conclusive proof that it had not been canceled. The lease itself was conditional in some respects. As stated therein, it was a ''Gentlemen's Deal and Understanding,'' and each had agreed to co-operate with the other in the event of a sale. It may well have been that the lease stood in the way of the consummation of the Byse-Skaff-Schultz combined deal and was nullified. If Mr. Skaff is to be believed, the defendant requested that a new leasing arrangement be made between them, and it was made. Defendant concedes that a new arrangement was made as to the ground outside the fence but that it was made with G. L. Godbersen.

█ The determination of the controversy is controlled entirely by the facts. The trial court found the testimony and the surrounding circumstances sustained the contentions of the plaintiff. We are inclined to agree with the trial court. While we have reviewed the record anew, we must give consideration to the fact that the trial court saw and heard the two witnesses and was in a better position to pass upon the probative value of their testimony.

█ Defendant complains because of the absence of Paul Godbersen in the military service of his country. However, he made no attempt to file any pleading of intervention in his behalf. Neither did he make any application for a continuance under the Soldiers' and Sailors' Civil Relief Act (50 U. S. C., section 501 et seq.), as amended, or push the court to a ruling upon the matter. Furthermore, the showing of Paul's interest in the controversy is very meager. But whatever interest either he or G. L. Godbersen may have it is not affected by the judgment against the defendant, and any recourse either may have against the plaintiff is not foreclosed against him by the judgment.

The judgment and decree is—Affirmed.

GARFIELD, C. J., and OLIVER, HALE, WENNERSTRUM, SMITH, MANTZ, and MULRONEY, JJ., concur.

HAYS, J., takes no part.